FILED
2018 Mar-23 AM 09:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **KEITH HENRY,**  )<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>**VENCORE SERVICES AND**  )<br>**SOLUTIONS, INC.,**  )<br>)<br>Defendant.  )<br>) | Civil Action Number<br>**5:16-cv-01814-AKK** |

## MEMORANDUM OPINION AND ORDER

Keith Henry alleges that Vencore Services and Solutions, Inc. discharged him because of his age and/or in retaliation for his protected activity, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621. Doc. 1. Vencore has filed a motion for summary judgment, doc. 25, which is fully briefed and ripe for consideration, docs. 26; 27; 30; 31; 32. After reading the briefs, viewing the evidence, and considering the relevant law, the court finds that the motion is due to be denied with respect to the discharge discrimination claim and granted in all other respects.

## I.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (internal quotations omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Id.* at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II. FACTUAL BACKGROUND[1]

After receiving an engineering degree in 1959, Henry embarked upon a long career in the aerospace industry performing stress analysis. Doc. 27-1 at 2-3. As a stress analysis engineer Henry determined the structural integrity of various aircrafts by performing geometric calculations by hand. Docs. 27-1 at 2-5; 27-2 at 69. He retired in 1992 at age fifty seven, but returned to the workforce after the 2008 financial crisis. Doc. 27-1 at 3. So in 2010, at age seventy four, Henry accepted a position with Vencore performing stress analysis for the U.S. Army's OH-58 helicopters. *Id.*

During his first few years, Henry received superb work evaluations and loved his work, stating that it was the "best job [he] ever had." Doc. 27-2 at 39, 93, 100, 102. Things changed when Henry complained to his supervisor, Tony Page, that one of his younger coworkers was harassing him because of his age. Page informed Henry that other employees had similar complaints about this employee and that he would speak with the employee. Doc. 27-2 at 53-56. Because the harassment continued, Henry filed a charge with the Equal

---

[1] The court recites the facts drawing all justifiable inferences in Henry's favor. *See Anderson*, 477 U.S. at 255.

Employment Opportunity Commission in November, 2013. Doc. 27-3 at 25. The charge also alleges age discrimination due to Vencore's promotion of a younger, less qualified employee instead of Henry. *Id.* Page knew about the EEOC charge and attended a meeting with the human resources staff to discuss it. Doc. 27-2 at 5, 18.

Around this time, Vencore shifted several of its employees, including Henry, to different projects as a result of government budget cuts. Doc. 27-2 at 20-21. At some point between February and April 2014,[2] Page transferred Henry to the CH-47 helicopter project, under the supervision of Cliff Myers. Docs. 27-1 at 7-11; 27-2 at 20-23. Henry claims that one of the first questions Myers asked him was whether Henry had "plans to retire." Doc. 27-1 at 13. Although he does not specifically remember asking this question, Myers—who is just two years younger than Henry—admits that he may have asked about Henry's retirement plans "in passing" or as part of "casual conversation." Doc. 27-3 at 9, 23.

The transfer resulted in Henry receiving primarily menial assignments that did not require any stress analysis. Docs. 27-1 at 7-11; 27-2 at 20-21. Henry complained to Myers, who agreed that Henry's new assignment was "dog work" and "not the most fun." Doc. 27-3 at 7-8. Although he was not thrilled with the

---

[2] The exact date Vencore transferred Henry to the CH-47 project is unclear. Henry's second EEOC charge states the transfer occurred "on or about February 24, 2014," doc. 27-3 at 30, but Henry and Page testified in their respective depositions that the transfer occurred in March, 2014, docs. 27-1 at 7; 27-2 at 20-21, and Vencore states in its brief that it reassigned Henry in April, 2014, doc. 26 at 3.

work, Henry continued to dutifully perform his obligations and received positive evaluations. Docs. 27-1 at 16; 27-2 at 111-31. Despite the positive reviews, Vencore discharged Henry, aged 79, two and a half years after transferring him to the CH-47 project. Docs. 27-1 at 3, 35; 31-5 at 1.

Vencore cites the Army's budget cuts to the CH-47 program as the basis for Henry's discharge. Apparently, after receiving notice of the cuts, Greg Oelberg, a program manager, concluded that "it would be necessary to reduce by one the number of engineers" working on the CH-47 program. Doc. 27-4 at 2. As a result, Oelberg directed Page, who ultimately "get[s] to pick who stays and goes" in the programs under his control, doc. 27-2 at 27, to recommend one of the CH-47 employees for discharge, docs. 27-2 at 5, 78-80. To make his decision, Page asked Myers, the supervisor of the team, to list employees "from most to least essential," adding "I think I know, but want to compare lists." Docs. 27-2 at 5, 78-80. In the list Myers prepared, he ranked Henry last out of the five employees on the team. Doc. 27-2 at 79. At the time, Henry was between seventeen to twenty eight years older than the other four team members, and had as many or more years of experience at Vencore as them. Doc. 31-5 at 1. Myers testified that he did not use any objective factors to rank the employees and created the list purely on his own view of each employee's "capability." Doc. 27-3 at 19. Myers later modified his

testimony, however, to add that he considered "capability and knowing how to do a finite element analysis."[3] Doc. 27-3 at 20.

A second round of Army budget cuts caused Vencore to lay off several other employees in 2016, including Gary Whitfield—who is seventeen years younger than Henry and also worked on the CH-47 project. Docs. 27-2 at 28-38; 31-5 at 1. Vencore subsequently rehired Whitfield for the CH-47 project. Doc. 27-2 at 27-28.

## III. ANALYSIS

Henry's complaint pleads age discrimination (Count I) and retaliation (Count II). Doc. 1. Specifically, Henry asserts that Vencore transferred him to the CH-47 project and ultimately discharged him because of his age and/or in retaliation for his EEOC charge. *Id.* Vencore has moved for summary judgment on both counts. Doc. 26. The court will address each count separately below.

### A. Age Discrimination (Count I)

The ADEA prohibits employers from taking adverse employment actions against an employee who is at least 40 years of age because of his age. 29 U.S.C. §§ 623(a)(1), 631(a). This requires showing that, but for the employee's age, the

---

[3] Finite element analysis is a specialized process for complex structures, conducted by computer, which divides the component parts of a physical body into a finite number of elements and calculates the stress concentration of each part accordingly. Docs. 27-1 at 5; 27-3 at 10, 23. Henry concedes that he lacks this expertise. Doc. 27-2 at 29, 111-31.

6

employer would not have taken the action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). Crucially, the ADEA only protects against discrimination that favors *younger* employees, *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 591 (2004) ("The enemy of 40 is 30, not 50."), and the comparator employees must be "substantially younger than the plaintiff," *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (U.S. 1996) (holding that "the replacement of one worker with another worker insignificantly younger" will not state a prima facie case, even if the replacement worker is under 40).

Where, as here, an ADEA plaintiff bases his claim on circumstantial evidence,[4] courts use the same burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for Title VII claims. *See Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). "Initially, the plaintiff must establish a *prima facie* case of discrimination. The employer then

---

[4] To be clear, Henry does allege that he has direct evidence of discrimination—i.e. Myers alleged inquiry into Henry's retirement plans. Direct evidence is "evidence that, if believed, proves the existence of a fact without inference or presumption" and includes "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations omitted). Though it helps Henry's circumstantial case, Myers' question is not such a "blatant" remark that it can prove discrimination without the need for an inference or presumption. *See id.*; *see also Lawson v. City of Pleasant Grove*, No. 2:14-CV-0536-JEO, 2016 WL 2338560, at *11 (N.D. Ala. Feb. 16, 2016), *report and recommendation adopted,* No. 2:14-CV-536-KOB, 2016 WL 1719667 (N.D. Ala. Apr. 29, 2016) ("[I]solated remarks of a decisionmaker suggestive of some bias . . . may serve as circumstantial evidence of discrimination, [but] are not themselves typically enough to support an inference that a particular adverse action was motivated by such bias."); *Leatzow v. A.M. Castle & Co.*, No. 99-14218-CIV, 2001 WL 1825851, at *4 (S.D. Fla. Nov. 14, 2001) ("[T]his court is disinclined to conclude that an isolated inquiry regarding . . . projected retirement plans is indicative of pretext.").

must respond with a legitimate, nondiscriminatory reason for its actions. In order to prevail, the plaintiff must establish that the employer's articulated legitimate, nondiscriminatory reason was a pretext to mask unlawful discrimination." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998).

To state a *prima facie* case, the plaintiff typically must prove that he was subjected to an adverse employment action in contrast to a similarly situated employee who is substantially younger. *Chapman v. AI Transp.*, 229 F.3d 1012, 1043 (11th Cir. 2000). Courts apply a slightly different analysis, however, where a position is eliminated entirely. In such an instance, the plaintiff must show (1) that he was at least forty years old and was adversely affected by an employment decision, (2) that he was qualified for his current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder could reasonably conclude that the employer would not have selected him for layoff but for his age. *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531–32 (11th Cir. 1996).

Henry complains of two separate adverse actions: his transfer to the CH-47 project in 2013, and his termination in 2015. The transfer claim fails because Henry cannot point to any similarly situated, substantially younger employees on the OH-58 project that Vencore treated more favorably. *See Chapman*, 229 F.3d at 1043. In fact, Vencore also transferred several younger employees around this time. Doc. 27-2 at 20-21. Moreover, even if Henry could state a *prima facie* case,

Vencore has articulated a legitimate, nondiscriminatory reason for the transfer, namely, cuts to the OH-58 program, doc. 27-2 at 20-21, which Henry has failed to rebut. Accordingly, the discrimination claim related to the transfer fails.

As for the termination claim, Vencore concedes that Heney can satisfy the first two elements of his *prima facie* case that he was at least forty years old, was discharged, and qualified for his position. Vencore contends, however, that Henry lacks any evidence creating an inference of age discrimination. Doc. 26 at 13. To the contrary, viewing the evidence in the light most favorable to Henry shows that he has demonstrated that (1) the primary decision maker inquired about his retirement plans; (2) he was the only team member laid off, even though he had as much or more experience than the rest of the team; (3) he was substantially older than the rest of the team; and (4) although Vencore laid off a younger individual several months later for economic reasons, it subsequently rehired that employee for the same position Henry held. Docs. 27-2 at 27-38; 27-3 at 9, 23; 31-5 at 1. Taken together, a reasonable jury could deduce from this evidence that Vencore selected Henry for layoff because of his age. *See Jameson*, 75 F.3d at 1531–32.

Vencore also challenges the *prima facie* case by noting that the fact that Page, who is fifty four, and Myers, who is seventy eight, "are in the protected age class with the plaintiff . . . undermines the claim that [Henry's termination] was based on age." Doc. 26 at 14. While it is true generally that Page and Myers "are

more likely to be the victims of discrimination than its perpetrators," *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991), such an argument is one for a jury and not a reason to grant summary judgment. Although Myers' age may make it less likely that he discriminated against Henry because of his age, *see Langston v. Carraway Methodist Hosps. of Alabama, Inc.*, 840 F. Supp. 854, 866 (N.D. Ala. 1993), this fact alone is insufficient to defeat Henry's *prima facie* case. As one court aptly put it in rejecting a similar argument, "employers could easily immunize themselves from discrimination claims merely by stocking their human resources departments with a rainbow coalition" of protected groups. *See Mosby v. Bd. of Educ. of the City of Norwalk*, No. 3:15-CV-01876 (JAM), 2017 WL 4368610, at *5 (D. Conn. Sept. 30, 2017). Moreover, Page—who accepted Myers' recommendation and ran it up the chain to Oelberg—is fifty four and thus "substantially younger" than Henry. *See O'Connor*, 517 U.S. at 313. Therefore, because stating a *prima facie* case is "not onerous," and a plaintiff satisfies this burden by setting forth acts that, "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors," *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981), the court concludes that Henry has easily satisfied that burden here.

Moreover, a reasonable jury could conclude that Vencore's stated reason for selecting Henry for the layoff—his inability to perform finite element analysis—is

a pretext for discrimination.[5] As an initial matter, Page admits he gave Myers no objective criteria from which to create his list, doc. 27-2 at 35, and courts generally impose higher levels of scrutiny to subjective employment decisions. *See Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985). This subjectivity is evidenced in Myers' initial answer that he considered only "capability" when creating the list. Doc. 27-3 at 19. Though he later testified that he also considered proficiency in finite element analysis, the pretextual nature of this reasoning is evident in Page's and Myers' admission that stress analysis engineers did not need to perform finite element analysis. Docs. 27-2 at 29; 27-3 at 23. In fact, Vencore's 2015 posting for a vacancy contains nothing about finite element analysis or even computer proficiency. *See* docs. 27-1 at 33-34; 27-2 at 23, 32; 27-3 at 23. The failure to list this as a job requirement, coupled with the excellent evaluations Henry received, which never mentioned that Henry needed to learn finite element analysis, *see* doc. 27-2 at 90-140, and Myers' admission that he could not recall any assignments that Henry was unable to perform using hand calculations, doc. 27-3 at 10-11, are sufficient for Henry to meet his burden to show pretext. *See Turlington*, 135 F.3d at 1432. Therefore, because the record paints a picture of a

---

[5] Henry also contends that the budget cuts are pretextual because "Vencore has the ability to manipulate the funds in a given project." Doc. 30 at 24. The ADEA "does not mandate that employers . . . transfer an employee to another position when it reduces its work force for economic reasons." *Taylor v. Canteen Corp.*, 69 F.3d 773, 780 (7th Cir. 1995). Moreover, courts are not taxed with "second-guess[ing] the wisdom of an employer's business decisions." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).

post hoc rationalization for Myers' seemingly subjective decision to name Henry as the most expendable member of the team, summary judgment is due to be denied on the disparate treatment discharge claim.

### B. Retaliation (Count II)

To successfully allege a *prima facie* case of retaliation under the ADEA, a plaintiff must show that "(1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). The only issue here is causation, which requires that the plaintiff establish that the adverse action would not have occurred but for her age. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Henry alleges that his EEOC charge in November 2013 motivated his reassignment in early 2014 and his subsequent termination in November 2015. Doc. 30 at 27-31. Proving causation typically requires showing, at a minimum, "that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997). There is no dispute that Page—who moved Henry to the CH-47 project—knew of Henry's EEOC charge. Doc. 27-2 at 18, 23. Still, to prevail Henry must prove that, but for his charge, Vencore would not have reassigned him. *See Nassar*, 570 U.S. at 360. Henry cannot make that

showing because he has failed to uncover any evidence that his EEOC charge motivated his reassignment. In general, a plaintiff can prove causation "by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (internal quotations omitted). Viewing the evidence in the light most favorable to Henry, his best case scenario is that Page reassigned him three months after he filed his EEOC charge. *See* n.2 *supra*. However, a gap of three months, standing alone, is too remote to establish causation, and Henry has failed to demonstrate any "other evidence tending to show causation." *See Thomas*, 506 F.3d at 1364. Moreover, Henry failed also to rebut Vencore's legitimate, nonretaliatory reason for the transfer: budget cuts to the OH-58 program, which resulted in the transfers of several employees, including Henry. Doc. 27-2 at 20-21. Accordingly, the retaliation claim based on Henry's transfer to the CH-47 project fails. *See Weeks*, 291 F.3d at 1311.

The retaliation claim for the discharge also fails. Nearly two years had passed between the EEOC charge and Henry's discharge, far too long to raise an inference of causation. *See Thomas*, 506 F.3d at 1364. Also, there is no evidence that Myers—who recommended Henry's discharge—knew about the charge. *See* doc. 27-3 at 5, 18. Therefore, in light of Henry's failure to state a *prima facie* case, summary judgment is also due on his retaliation claim.

## **CONCLUSION AND ORDER**

Consistent with this opinion, Vencore's Motion for Summary Judgment, doc. 25, is **DENIED** solely as to Henry's claim in Count I that Vencore discharged him because of his age. The motion is **GRANTED** in all other respects. Accordingly, Henry's discrimination claim related to his transfer (Count I) and his retaliation claim (Count II) are **DISMISSED WITH PREJUDICE**.

**DONE** the 23rd day of March, 2018.

*/s/ Abdul Kallon*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE